7 F.3d 233
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Charles FANN, Plaintiff-Appellant,
v.
Anthony M. FRANK, Postmaster General, Defendant-Appellee.
 No. 92-3274.
 United States Court of Appeals, Sixth Circuit.
 Oct. 15, 1993.
 
 Before: KENNEDY, SILER and BATCHELDER, Circuit Judges.
 
 ORDER
 
 1
 Charles Fann appeals pro se from a district court judgment dismissing his employment discrimination case filed under 5 U.S.C. § 7703(b)(2), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16c, and the Privacy Act of 1974, 5 U.S.C. § 552a. His appeal has been referred to a panel of this court pursuant to Rule 9(a), Rules of the Sixth Circuit. Upon examination, the panel unanimously agrees that oral argument is not needed in this case. Fed.R.App.P. 34(a).
 
 
 2
 Fann was discharged from the Postal Service in 1988, for making false statements to a Field Medical Officer regarding a back injury. His discharge was affirmed by the Merit Systems Protection Board ("MSPB"), and the Equal Employment Opportunity Commission ("EEOC") concurred with the MSPB's decision.
 
 
 3
 In his complaint, Fann alleged that the defendant discriminated against him because of his race by terminating him and by refusing to settle a grievance regarding his termination. Fann also alleged that the defendant violated the Privacy Act. With the consent of the parties, a bench trial was held before a magistrate judge in August of 1991, and a judgment was subsequently entered for the defendant on February 21, 1992. It is from this judgment that Fann now appeals.
 
 
 4
 The district court found that Fann began working for the defendant in 1969. He was transferred to a clerical position after being injured in an automobile accident in 1971. Fann also injured his back in 1979, and he was treated for a herniated disc in 1984. In September 1987, Fann's treating physician, Dr. Levitas, excused him from work for one week due to increased back pain. Fann suffered a recurrence of his back injury in November 1987, and bed rest was prescribed by several physicians, including Dr. Levitas. Fann subsequently submitted forms to the Office of Workers' Compensation Program ("OWCP"), which indicated that he was totally disabled due to back pain.
 
 
 5
 On December 3, 1987, Fann was evaluated by a Postal Service Field Medical Officer, Dr. Jonsyn. It was during this evaluation that Fann made the alleged misrepresentations that led to his termination. The district court made the following findings of fact regarding the evaluation:
 
 
 6
 The purpose of the evaluation was to determine whether Fann could perform any type of postal work. Prior to the evaluation, Dr. Jonsyn reviewed available records. During the evaluation, Dr. Jonsyn asked Fann if he was following his physicians' orders and Fann said he was. Fann told Dr. Jonsyn that he experienced severe pain if he sat or stood for more than fifteen minutes, that he could not drive an automobile or carry groceries, and that he depended on his teenage sons to perform household chores. Dr. Jonsyn noted Fann walked in a "slumped" fashion, had difficulty walking, and had to hold onto a table for support when rising or sitting. He accepted the diagnoses of Fann's doctors without himself examining Fann. Dr. Jonsyn concluded Fann was totally disabled due to his back injury.
 
 
 7
 A program had been initiated to determine whether persons receiving OWCP benefits were actually entitled to them. The district court summarized the testimony of two postal employees who had observed Fann to determine whether his daily activities exceeded his medical restrictions.
 
 
 8
 The testimony of Kemper and Henderson, supported by the photographs and video tape recordings reveals that, during the surveillance period, Fann walked up and down steps, stood for lengthy periods of time, carried groceries and boxes, entered and exited an automobile with no apparent pain, drove an automobile on numerous occasions, walked normally, and generally moved about with no apparent back pain. The only time they saw Fann exhibit evidence of pain was when he entered and left the Main Post Office for his December 3, 1987 visit with Dr. Jonsyn.
 
 
 9
 Fann was also interviewed by a postal investigator and reportedly admitted driving, walking occasionally, carrying groceries, putting oil and antifreeze into his automobile, and helping his new wife move into his house.
 
 
 10
 The inspector disclosed the results of Fann's surveillance to Drs. Levitas and Jonsyn. Dr. Levitas then cleared Fann for part-time, light duty work, and Fann returned to work for four hours a day even though he continued receiving partial disability payments. Dr. Jonsyn reportedly stated that Fann's actions were not consistent with the pain that he had described during his previous evaluation. Fann's supervisors then issued a Notice of Proposed Removal and a Letter of Decision-Removal indicating that Fann was discharged because he had misrepresented the severity of his back condition. Fann appealed to the MSPB, which found that he had not been discriminated against and that Fann's misrepresentations to Dr. Jonsyn provided cause for his removal.
 
 
 11
 The president and vice president of Fann's union tried to settle a grievance regarding Fann's termination. However, the Postal Service Labor Relations Manager, Thomas Lang, told them that he would not consider a settlement.
 
 
 12
 The appropriate tests for analyzing a discrimination claim, such as Fann's, were described in Wilson v. Stroh Cos., 952 F.2d 942 (6th Cir.1992).
 
 
 13
 In a Title VII employment discrimination case, the plaintiff bears the initial burden of submitting evidence to support a prima facie case of discrimination. The plaintiff must produce "evidence sufficiently strong to raise an inference that [the employer's conduct was] racially motivated." McKenzie v. Sawyer, 684 F.2d 62, 71 (D.C.Cir.1982). "Proof of discriminatory motive is critical" when disparate treatment is claimed. International Bhd. of Teamsters v. United States, 431 U.S. 324, 335 (1977).
 
 
 14
 Once the plaintiff establishes a prima facie case, the defendant must articulate a legitimate, non-discriminatory reason for his action. If the defendant is successful, the plaintiff still may prevail if he establishes that the apparently non-discriminatory rationale was merely a pretext. A plaintiff may show pretext by establishing that he did not violate the work rule for which he was disciplined or that other employees who engaged in similar misconduct received less severe sanctions.
 
 
 15
 Wilson, 952 F.2d at 945 (citations omitted). While the burden of production shifts under this analysis, the burden of persuasion stays at all times with the plaintiff. St. Mary's Honor Ctr. v. Hicks, 113 S.Ct. 2742, 2749 (1993). Fann has not met this burden in the present case because his allegations of discriminatory intent are wholly conclusory with regard to his termination. See Mitchell v. Toledo Hosp., 964 F.2d 577, 584-85 (6th Cir.1992). Furthermore, even if a prima facie case of discrimination were established regarding the defendant's refusal to consider settlement, the defendant has asserted legitimate non-discriminatory reasons for his action, and Fann has not shown that those reasons were pretextual.
 
 
 16
 The district court based its conclusion that Fann had not made out a prima facie case of discriminatory discharge on the following findings of fact:
 
 
 17
 Fann has produced no evidence that his removal was discriminatory. He was one of a number of persons, black and white, male and female, who were investigated by the Postal Service to determine whether they were receiving OWCP benefits even though they were physically capable of working. The two supervisors who participated in the decision to remove Fann were black males. The evidence submitted to his supervisors and admitted at trial, including photographs and videotapes of Fann's physical activities, overwhelmingly demonstrates that Fann falsified his claim of total disability. Once his orthopedist was aware of this evidence, he changed Fann's medical restriction, and Fann resumed work for four hours per day without any apparent problem. Thus, Fann has failed to present a prima facie case of discriminatory discharge.
 
 
 18
 Fann has not shown that these findings are clearly erroneous as prescribed by Fed.R.Civ.P. 52(a). See Anderson v. City of Bessemer City, 470 U.S. 564, 573-74 (1985).
 
 
 19
 In his appellate brief, Fann alleges that his condition had worsened in 1986, that only one week of bed rest was prescribed in November 1987, that he did not stand for long periods of time, that he did not admit carrying bags of groceries, and that it was Dr. Levitas who submitted OWCP forms stating that he was totally disabled. Even if these allegations were true, they would not be sufficient to establish a prima facie case. At most, they suggest that the defendant incorrectly determined that Fann had lied about his condition to Dr. Jonsyn. Fann's allegations do not indicate that he would be replaced by a white employee or that he was treated differently than similarly situated white employees. Moreover, the defendant's alleged mistake in discharging him for cause is not enough per se to demonstrate a discriminatory animus. See St. Mary's Honor Ctr., 113 S.Ct. at 2753; Galbraith v. Northern Telecom, Inc., 944 F.2d 275, 282 (6th Cir.1991), cert. denied, 112 S.Ct. 1497 (1992). Thus, Fann has not met his burden of showing that his termination was racially motivated. Furthermore, the defendant has articulated a legitimate non-discriminatory reason for his action, and Fann has not shown that the proffered reason was pretextual.
 
 
 20
 The district court also considered Fann's allegation that the defendant had discriminated against him by refusing to settle a grievance regarding his removal. The court found that Fann had stated a prima facie case of discrimination regarding this claim, presumably because Lang followed directions from his supervisor and reinstated a similarly situated white employee named Correll. However, the court also determined that Fann's claim ultimately lacked merit because the defendant had articulated a legitimate non-discriminatory reason for refusing to settle Fann's grievance.
 
 
 21
 Lofland explained why he ordered Lang to settle Correll's case. When he learned that OWCP had approved total disability benefits for Correll, he realized that the Postal Service would have to pay these benefits for many years. Correll had offered to return to full time work, which would avoid payment of benefits entirely, thus accomplishing the goal of the injury compensation reduction program. Permitting Fann to return to his job, however, would not have avoided payment of partial workers' compensation. Fann insisted he was partially disabled, and he was then receiving OWCP partial disability benefits while working four hours per day. Thus, settling Fann's grievance would not have been consistent with the goal of the injury compensation reduction program. Lofland's demeanor in presenting his testimony was that of a credible witness.
 
 
 22
 ....
 
 
 23
 Additional reasons exist for finding that Fann failed to meet his burden of proof. Although two other white employees, Pyles and Smith, had their removals reduced to suspensions, at least two other white employees, Roy and Kappes, were not offered settlements. The Postal Service settled the removal grievance of a similarly situated black employee, Stanton, and permitted him to return to work. Finally, a white employee, Kappes, was subjected to criminal prosecution for misrepresenting his disability and Fann was not.
 
 
 24
 In his appellate brief Fann alleged only that he had not tried to settle his grievance by submitting a document which indicated the amount of his disability benefits and that he had not participated in the settlement discussions with Mr. Lang. These allegations do not indicate that the district court's findings were clearly erroneous or that its ultimate conclusion was in error. As noted by the court, the defendant did articulate a legitimate reason for refusing to settle the grievance, and Fann has not shown that this reason was a pretext for discrimination.
 
 
 25
 The district court found that Fann did not pursue his Privacy Act claim at trial and that no evidence was presented to demonstrate a disclosure or record-keeping activity that is prohibited by the Act. Cf. 5 U.S.C. § 552a(g)(1). Fann now argues that Mr. Lang's testimony indicated that he had taken the photos and videotapes of Fann to Florida in an attempt to overturn his prior disability claim. Fann failed to procure a transcript of Lang's testimony. In addition, we note that Fann did not raise this specific claim in his complaint or in his post-trial brief to the district court. Thus, we will not address Fann's Privacy Act claim vis-a-vis Mr. Lang because it was not clearly raised in the district court. See White v. Anchor Motor Freight, Inc., 899 F.2d 555, 559 (6th Cir.1990).
 
 
 26
 Accordingly, the district court's judgment is affirmed. Rule 9(b)(3), Rules of the Sixth Circuit.